# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

BKY Case No. 11-43113 RJK

Curtis C. Nelson,

       Debtor.

Siamak Masoudi,

Adv. No. 11-4218

       Plaintiff,

vs.

Curtis C. Nelson,

       Defendant.

## NOTICE OF HEARING AND MOTION FOR ORDER DISMISSING COMPLAINT

TO: Parties in Interest as Specified in Local Rule 9013-3.

    1.     Curtis C. Nelson ("Defendant") moves the Court for the relief requested below and gives notice of hearing.

    2.     The court will hold a hearing on the Defendant's request for relief at 10:00 a.m. on October 19, 2011 at Courtroom 8W, U.S. Bankruptcy Court, Federal Courthouse, 300 S. 4th St., Minneapolis, Minnesota before the Honorable Robert J. Kressel.

    3.     Any response to the motion must be filed and delivered not later than October 14, 2011, which is five days before the date set for the hearing. UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED BEFORE THE DEADLINES NOTED ABOVE, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

    4.     This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and

1334, Fed.R.Bank.P. 5005, and Local Rule 1070-1. This is a core proceeding. The bankruptcy case was filed on April 13, 2011. The case is pending in this court.

5.     This motion arises under Rule 7012 of the Federal Rules of Bankruptcy Procedure which incorporates Rule 12 of the Federal Rules of Civil Procedure. This motion is filed under Fed.R.Bankr.P. 9013 and Local Rules 7007-1 and 9013-1 through 9013-3. The Debtor moves the Court for an order dismissing the complaint filed by Siamak Masoudi ("Plaintiff") with prejudice.

6     While it is obvious that, should it ever be required, Defendant will dispute Plaintiff's "facts." No facts are necessary here, however, as for the purpose of this motion the facts in the complaint are accepted as true. A true and correct copy of the Plaintiffs' Complaint is attached as Exhibit A.

7.     No verification is necessary; no witnesses are necessary.

8.     The Plaintiff fails to state a claim upon which relief may be granted.

WHEREFORE, the Defendant requests that the court enter an order dismissing this case with prejudice, and for other such relief the court finds just and equitable.


Dated: September 27, 2011                 HINSHAW & CULBERTSON LLP

                                          By:  /e/ Jamie R. Pierce
                                          Thomas G. Wallrich (#213354)
                                          Jamie R. Pierce (305054)
                                          Peter L. Crema, Jr. (#218868)
                                          333 South Seventh Street, Suite 2000
                                          Minneapolis, MN 55402
                                          Telephone: 612-333-3434

                                          ATTORNEYS FOR DEFENDANT

121294062v1  72096

# VERIFICATION

I, Jamie R. Pierce, hereby declare under penalty of perjury, that the facts alleged in the forgoing motion are true to the best of my knowledge, information, and belief.

Dated: September 27, 2011

By: /e/ Jamie R. Pierce
Jamie R. Pierce

121294062v1  72096

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                              BKY Case No. 11-43113 RJK

Curtis C. Nelson,

        Debtor.

Siamak Masoudi,                                     Adv. No. 11-4218

        Plaintiff,

vs.

Curtis C. Nelson,

        Defendant.

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION TO DISMISS

### INTRODUCTION

Curtis C. Nelson ("Defendant") respectfully submits this memorandum in support of his motion to dismiss the complaint filed by Siamak Masoudi ("Plaintiff"). The Plaintiff fills his complaint with irrelevant and scandalous allegations, and in twenty pages has not alleged sufficient facts to state a claim for relief under any theory. The Plaintiff's complaint must be dismissed with prejudice.

### FACTS

On this motion to dismiss, the facts as pleaded in the complaint must be deemed to be true. The "facts" are as follows, with paragraph numbers corresponding to those in the complaint:

6.      Plaintiff and Nelson have known each other for over twenty (20) years. During that time, Plaintiff and Nelson have worked together at Carlson Companies and other business ventures.

7.      Plaintiff and Nelson were also personal friends during the approximately twenty-year relationship.

8.      In early July, 2008, Nelson contacted Plaintiff and asked Plaintiff to join Nelson's new company, Visible Customer, a marketing firm targeted at automobile dealerships. Nelson enthusiastically told Plaintiff that this new Company had a software and data process ("Product/Service") that could revolutionize the automobile dealers' marketing efforts for repeat business for auto purchases and auto services.

9.      At the time Nelson contacted Plaintiff about his new Company, Plaintiff was the President and owner of his own hospitality consulting company, SAM Hospitality.

10.     Nelson vigorously recruited Plaintiff to come and join him in his new venture with Visible Customer. Nelson told Plaintiff that he needed him because he needed people he could trust and that he knew and trusted Plaintiff's skill set and work ethics. Nelson also said that job offers were out to others and Plaintiff needed to move fast to get in on this fabulous opportunity to change the marketing industry and make a lot of money.

11.     Plaintiff initially turned down Nelson's offer to join him at Visible Customer. Plaintiff was reluctant to leave his highly compensated job and independence to join a new venture with Nelson. Plaintiff's reluctance in part was due to Nelson's history of alcohol and drug abuse and addiction.

12.     Nelson acknowledged to Plaintiff that he was an alcoholic, and told Plaintiff that if that was a concern Plaintiff could communicate directly with Nelson's mental health counselor. Nelson promised Plaintiff that he was done with alcohol and drugs.

13.     During the recruitment process, Nelson promised Plaintiff that he was not using alcohol and drugs because of his past issues with his family and ex-wife. Nelson represented to Plaintiff that he could not use alcohol or drugs or it would affect his ability to receive trust funds, and he had to be drug-free to see his children.

14.     In order to persuade Plaintiff to accept employment at Visible Customer, Nelson told Plaintiff that the Company had at least 175 customer accounts already signed on with the Company.

15.     In addition, Nelson told Plaintiff that Visible Customer's software and data program was operating at full scale and had "proof of concept."

16.     Nelson also told Plaintiff on or about July 20, 2008, that Visible Customer had doubled the gross profit margin the preceding week so now was the time to join the

Company. Nelson further attempted to induce Plaintiff to join him at Visible Customer by stating that he anticipated two changes that were being tested in the product to increase the profit margin by double again soon.

17.     Nelson also told Plaintiff that the Product/Service was operating and producing ten (10) times or 1,000% return for the auto dealer accounts.

18.     Nelson told Plaintiff that the core product was generating $1,000 gross profit per month per account, and he expected it could rise as much as eight (8) to ten (10) percent within a short time.

19.     Nelson told Plaintiff that he was investing his own money into Visible Customer, and that the Company was well capitalized. During his pursuit of Plaintiff to join Visible Customer, Nelson sent Plaintiff a text message asking him what color he wanted his Ferrari to be when they made it big in two years.

20.     Nelson also contacted Plaintiff's wife in an attempt to persuade Plaintiff to join him, and he personally went to Plaintiff's home to talk with Plaintiff and his wife to persuade Plaintiff to join Visible Customer.

21.     Nelson tried to induce Plaintiff to join him by offering a significant base salary, bonus, and stock options.

22.     Nelson repeatedly attempted to persuade Plaintiff to join him at Visible Customer, despite Plaintiff's initial response declining the employment offer.

23.     On July 21, 2008, Nelson offered Plaintiff in writing the position of Senior Vice President of Operations.

24.     In order to persuade Plaintiff to accept employment, Nelson increased his original offer of base salary and raised the bonus to 50% of the base and guaranteed half of the bonus for the first year.

25.     Pursuant to the proposed Employment Offer and Agreement, Plaintiff was to be paid a base salary of $250,000, and a bonus level targeted at 50% of base salary with the total maximum opportunity up to 150% of that amount for extraordinary performance. For the remainder of the year 2008, the bonus was guaranteed at the 50% level.

26.     Plaintiff would also receive ten (10) days of vacation for the remainder of the year 2008, and thereafter twenty (20) days per year.

27.     As part of his compensation, Plaintiff was to receive 250,000 stock options with an exercise price of $1.00. The first 125,000 options were to vest immediately upon commencement of employment; another 25% were to vest after completing 12 months of employment and the remaining 25% were to vest after 24 months of continuous employment.

121294062v1 72096

28.     Despite the substantial compensation package, Plaintiff expressed concern to Nelson about leaving his job that he enjoyed, the people he worked with, and the knowledge that it was a stable position.

29.     Nelson reassured Plaintiff that Visible Customer was in the beginning of the high growth part of the business life cycle and not in a start-up mode. Nelson also assured Plaintiff that Visible Customer had solid financial backing by Nelson's company, Curt Company One.

30.     Plaintiff relied on Nelson's representations about Visible Customer business operations and accounts.

31.     Plaintiff also relied on Nelson's repeated assurances that he was a new man, and promises that Nelson was not using, and would not in the future, use alcohol or drugs, to make his decision to accept Nelson's offer of employment at Visible Customer.

32.     Based upon the representations made by Nelson, as stated herein, Plaintiff finally agreed to work for Nelson and Visible Customer.

33.     As a condition of employment, Plaintiff required a guaranteed severance plan that he would receive his base salary for one year in the event it didn't work out with Visible Customer.

34.     On or about August 8, 2008, Plaintiff began work part-time at Visible Customer. Plaintiff completed matters and resigned from his former employer, and closed his consulting business.

35.     On or about August 28, 2008, Plaintiff signed the Employment Offer and Agreement with Visible Customer, which Nelson executed on behalf of Visible Customer.

36.     The parties agreed as set forth in the Employment Agreement that if Plaintiff's employment ended with Visible Customer that Plaintiff would receive a severance allowance equal to twelve (12) months of his base salary.

37.     Only after Plaintiff began working at Visible Customer did he learn that Nelson had misrepresented that Visible Customer had 175 customer accounts at the time he persuaded Plaintiff to join Visible Customer. In addition, Plaintiff also learned that Nelson misrepresented the status of the Product/Service and that it did not perform the functions that Nelson had emphasized and the Company was not generating the profit that was promised to dealers when Nelson persuaded Plaintiff to join him.

38.     During the first few months of employment at Visible Customer, Plaintiff worked hard to promote sales to auto dealerships, the target of the marketing Product/Service of

121294062v1 72096

Visible Customer. Nelson continued to assure Plaintiff that the Product/Service was completed and operable, and promised continued enhancements to it.

39.     During the first few months at Visible Customer, Plaintiff learned, however, that the Product/Service was not operating as Nelson had promised him and had also represented to current and potential customers.

40.     In about October, 2008, Plaintiff again asked Nelson about the financial health of Visible Customer and Nelson assured him that it was covered and not to worry about it. Nelson told Plaintiff that he would cover the financing aspect of the Company and Plaintiff should focus on sales.

41.     Despite Nelson's representations to Plaintiff that Visible Customer was in the beginning of the high growth cycle of business and that the software was operating at full capability, this was not the case. Contrary to Nelson's assertions, the software was not capable of doing what Nelson had represented to Plaintiff what it could do.

42.     In addition, Nelson changed and revised the Product/Service to the extent that it could not deliver what it was represented to do for customers in the automobile industry.

43.     During Plaintiff's employment, he repeatedly reported numerous problems with the software to Nelson. In response, Nelson assured Plaintiff that it would be fixed and enhanced, but the software was not ultimately fixed and/or enhanced.

44.     On or about November 12, 2008, Nelson offered Plaintiff and his wife an opportunity to invest money in Nelson's company, Curt Company Investments, with the promise that they would earn a significant return on their investment within one year. Nelson assured Plaintiff and his wife that the investment was backed by Nelson's company's $18 million account.

45.     Nelson promised Plaintiff and his wife a return of twenty percent (20%) on the investment in Curt Company Investment.

46.     Nelson, as the President and CEO of Curt Company Investments, executed a one-year Promissory Note effective November 20, 2008, for the principal amount of $100,000.00 to Plaintiff and his wife Afsaneh Motameni. The Note provided payment in full was to be made in one year with 20% interest per annum compounded annually.

47.     In 2009, Visible Customer experienced dire financial issues. The Company was not able to pay vendors, making payroll was a repeated issue, and customers were canceling accounts due to the Company's failure to meet its contractual obligations. Employees were let go, and employees, including Plaintiff, took pay cuts.

48.     Nelson's representations about substantial financing of Visible Customer were also false. In February, 2009, Visible Customer had insufficient financing to meet its

121294062v1 72096

payable obligations. In October, 2009, Visible Customer was unable to cover its payroll, and Defendant Nelson borrowed money from his parents to pay employees.

49.     Upon information and belief, in June of 2010, Nelson paid the payroll directly from his own accounts.

50.     Even while Visible Customer had significant problems financially, Nelson misused funds from Visible Customer to charter a private jet for a personal vacation with his girlfriend to Las Vegas. When Plaintiff learned of Nelson's misuse of funds, he confronted Nelson about it and complained that he was taking a pay cut while Nelson was using company funds for personal trips.

51.     In 2009, Nelson exhibited erratic behavior. For example, Nelson was late for meetings with important customers, vendors, and prospects. At other meetings Nelson fell asleep or didn't make sense.  He made rash decisions, and intimidated people in meetings by getting angry and pounding his fist on the table. He accused senior management of stealing from him and audited their expense reports, never substantiated any inappropriate reports. He insisted on firing valuable people from the company while keeping his personal friends on staff when they knew nothing about the business. He directed valuable resources on initiatives without consultation with management about the viability of such efforts. While the Company was laying people off and asking for pay cuts from everyone, Nelson spent thousands of dollars redecorating the office and creating a "zen" room for meditation.

52.     On October 21, 2009, Plaintiff complained to Nelson that Visible Customer was in serious trouble because the software was not meeting expectations of customers, and that Nelson had alienated customers, vendors, and employees. Plaintiff warned Nelson that if something wasn't done, the Company's future was in jeopardy.

53.     In November, 2009, Plaintiff and his wife demanded that Nelson make payment to them based on the Promissory Note with Curt Company Investments. Nelson hesitated and requested that Plaintiff and his wife leave their $100,000 investment with Curt Company Investments for another year.  Plaintiff and his wife refused and again demanded payment on the note.

54.     Nelson finally told Plaintiff and his wife that he would pay back the principal amount of $100,000 in January, 2010, three months after the due date on the note, if they agreed to reinvest the interest and the remaining amount of Plaintiff's unpaid signing bonus of about $12,000 with Nelson. Plaintiff and Nelson went back and forth about repayment on the Note, and Nelson kept delaying the repayment.

55.     In January, 2010, Plaintiff learned that Nelson was paying another employee, Ken Raush, $250,000 when Nelson had told Plaintiff that the employee was being paid minimal salary and given stock in the Company. Plaintiff complained to Nelson that he was taking a $50,000 pay reduction and no bonus in order to help the Company's

121294062v1  72096

financial situation when Nelson was paying others exorbitant amounts of money for minimal services, and using Company funds for Nelson's personal benefit.

56.     Nelson again promised Plaintiff that Visible Customer was financially sound and that he had personally put in $2 million into the Company.

57.     In March, 2010, Nelson admitted to Plaintiff that he was drinking alcohol again and voluntarily admitted himself to a treatment center.

58.     In April, 2010, Nelson acknowledged that he owed Plaintiff his bonus and payment on the Note. Nelson asked Plaintiff if he could have a payment schedule, which Plaintiff refused. Nelson also tried to persuade Plaintiff and his wife to take equity in the Company or make another loan to Visible Customer because Nelson said it was a good time to invest in Visible Customer as it would be turning a profit in the next few months. Plaintiff and his wife declined Nelson's offer to invest in Visible Customer.

59.     Nelson then told Plaintiff that he would pay the principal back if Plaintiff agreed to "lend" Nelson the amount of the interest owed and the bonus that was still owed to Plaintiff. Although they did not want to invest any money in Visible Customer, Plaintiff and his wife felt they had no choice but to accept Nelson's proposal or they believed they would not receive payment on their $100,000 loan to Curt Company Investments. At the time he agreed, Plaintiff believed that the new loan was to Curt Company Investments.

60.     In February of 2010, Nelson paid Plaintiff the principal on the Note dated November 20, 2008.

61.     On April 1, 2010, Nelson executed a Secured Promissory Note to Siamak Masoudi on behalf of Visible Customer Holdings, LLC promising to pay Plaintiff the principal sum of up to Fifty Thousand and 00/100 Dollars ($50,000). To date, the principal amount and interest has not been paid to Plaintiff.

62.     During his employment, Plaintiff repeatedly refused to misrepresent the software product and its capabilities to potential customers and warned Nelson that such misrepresentations were illegal and/or fraudulent.

63.     During the first week of June, 2010, Plaintiff was asked by Steve Hastings, Chief Financial Officer of Visible Customer, to deposit checks at US Bank on behalf of the Company. Although Plaintiff questioned it because he had no knowledge of a Company account at US Bank, Hastings told him a new account was opened because if money was deposited in other Company accounts at a different bank, the bank might collect from the account past due charges.  Although Plaintiff questioned whether this was an unethical action to avoid paying debts, he agreed to drop it off based on Hastings' assurance that it was not unethical.

64.     Plaintiff went to the US Bank with the checks made payable to Visible Customer and the deposit slip Hastings had given him attached to the checks. Upon attempting to

deposit the checks, the bank teller advised Plaintiff that the deposit slip was for an account belonging to Curtis Nelson and she could not find a Visible Customer account. The teller called her manager, who further advised Plaintiff that depositing checks made out to Visible Customer in a private account was illegal. Embarrassed, Plaintiff left the bank and traveled back to Visible Customer's office.

65.     Plaintiff returned the checks and the deposit slip to Hastings, who told him that he and Nelson had done it on a number of occasions before and it was fine. That same day, Plaintiff reported to Nelson and Hastings that depositing the checks in Nelson's account was illegal, and that he refused to engage in illegal activities.

66.     Also in June 2010, Plaintiff and other employees were paid their salaries with checks from Curtis Company One, LLC. Plaintiff objected, believing that this was illegal since Curtis Company One did not have authority to withhold tax deductions and no means of filing tax statements for the employees of Visible Customer.

67.     During this same time, Plaintiff also complained to Nelson that Visible Customer was in dire trouble with its customers and vendors, employees were demoralized and something needed to be done.

68.     After Plaintiff complained, and reported in good faith these fraudulent and illegal practices, Nelson fired Plaintiff on June 9, 2010 as a result of Plaintiff's complaints.

69.     On or about June 10, 2010, Plaintiff demanded that Nelson pay him the money owed to him consisting of his salary for the last two weeks of employment, severance pay under his Employment Agreement, payout of accrued vacation, and reimbursement of travel and business expenses. Plaintiff also made a demand to Nelson for payment for monies owed on the promissory note with Curt Company Investments and the note to Visible Customer, which included a bonus due the previous year.

70.     Subsequent to Plaintiff's termination, Nelson made false statements about Plaintiff and his business reputation to others. For example, Nelson reportedly told other Visible Customer employees that Plaintiff had "been undermining the company and all of you for the last six months"; "Siamak has become increasingly volatile over the past six months"; "he has been making many demands over the past several months"; "Siamak was demanding to be paid even though no one else is able to get paid"; "don't trust anything Siamak had told you"; "Siamak has thrown all of you under the bus"; "Siamak resigned from the company"; "Siamak invested money in the company and asked for a ridiculous interest rate on the money he borrowed the company"; "Siamak was calling Visible Customer's dealers saying horrible things about Nelson relating to his past"; and that Siamak gave Nelson "bad information to keep him investing in Visible Customer as well as some of the larger investments the Company had made."

71.     As a direct and proximate result of Defendant Nelson's conduct, Plaintiff has suffered and will continue to suffer substantial lost income and benefits, lost career

121294062v1 72096

opportunities and job security, harm to his professional reputation and other damages.

72.     Defendant Nelson was the sole owner of Visible Customer Holdings, LLC, Curtis Company One, LLC, Curt Company Customer, LLC, Curt Company, Inc., and Curt Company Investments, LLC, and was the majority shareholder of Visible Customer, LLC.

73.     Defendant Nelson utilized corporate funds for his personal use, including, but not limited to, taking a personal trip to Las Vegas using company funds and directing that checks made to the order of Visible Customer be deposited in his personal bank account. As a result of Defendant Nelson's diversion of corporate funds, the corporation was unable to pay what was owed to Plaintiff.

74.     Upon information and belief, Defendant Nelson personally guaranteed at least one contract with a vendor for services to Visible Customer.

75.     On or about March 25, 2011, Plaintiff initiated a civil action in Hennepin County District Court, Fourth Judicial District, of the State of Minnesota against Defendant Nelson, Visible Customer, Visible Customer Holdings, LLC, Curtis Company One, LLC, Curt Company Customer, LLC, Curt Company, Inc., Curt Company Investments, LLC, and Insperity PEO Services, L.P., (f/k/a) Administaff Companies, II, L.P., alleging claims of fraudulent and/or negligent misrepresentation, violation of Minn. Stat. § 181.64, promissory estoppel, breach of contract – employment agreement, breach of contract – promissory note, breach of contract – secured promissory note, defamation, violation of Minn. Stat. § 181.13, violation of the Minnesota Whistleblower Act (Minn. Stat. § 181.932, et seq.), common law wrongful discharge, pierce the corporate veil, and unjust enrichment.

76.     Visible Customer, LLC, and upon information and belief its parent company, Curt Company Customer, LLC, operated at all times relevant hereto from their corporate offices located at 1555 Linner Rd., Wayzata, MN 55391, Hennepin County, Minnesota. Upon information and belief, on or about July 6, 2010 Visible Customer, LLC filed a voluntary Chapter 7 action in U.S. Bankruptcy Court (Petition # 10-45062), and the stay that arose there from enjoined the continuation of legal actions against Visible Customer, LLC. Upon further information and belief, Nelson is the sole owner of Curt Company Customer.

77.     Visible Customer Holdings, LLC is a Minnesota corporation operating at all times relevant in the City of Wayzata, Hennepin County, Minnesota. Upon information and belief, Nelson is the sole owner of Visible Customer Holdings.

78.     Curtis Company One, LLC, is a Minnesota corporation and operated at all times relevant hereto from its corporate offices in the City of Wayzata, Hennepin County, Minnesota. Upon information and belief, Nelson is the sole owner of Curtis Company One.

9

79.     Upon information and belief, Curt Company Customer, LLC is a Minnesota entity wholly-owned by Curtis Company One and through which Nelson invested in Visible Customer. Upon information and belief, Nelson is the sole owner of Curt Company Customer.

80.     Upon information and belief, Curt Company, Inc. is a Minnesota entity wholly-owned by Defendant Nelson and through which Nelson invested in Visible Customer. Upon information and belief, Nelson is the sole owner of Curt Company

81.     Curt Company Investments, LLC is a wholly-owned subsidiary of Curtis Company One, and a Delaware corporation doing business in Minnesota. Defendant Nelson served as the President and Chief Executive Officer of Curt Company Investments. Upon information and belief, Nelson is the sole owner of Curt Company Investments.

82.     Administaff is a professional employer organization ("PEO") and operated as a co-employer, along with Visible Customer, of Plaintiff.

83.     On or about April 8, 2011, Plaintiff amended his Complaint in his state court civil action to remove Visible Customer as a defendant based upon a stay imposed in Visible Customer's voluntary Chapter 7 action in U.S. Bankruptcy Court (Petition # 10-45062).

84.     Subsequent to Plaintiff's service of his Amended Complaint in the state court civil action, on or about May 2, 2011, Defendant Nelson filed a Chapter 11 Bankruptcy Petition (Petition # 11-43113).


See Complaint, Exhibit A.

## ARGUMENT

The Plaintiff's "facts," even if deemed to be true, do not rise to the level of particularity required under applicable rule and case law.   His complaint must be dismissed.

## I.     PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER SECTION 523(a)(2)(A).

Rule 9 requires allegations of fraud to be made with particularity.  The Plaintiff fails to meet his burden under this rule.

The Plaintiff has sued under section 523(a)(2)(A) of the Bankruptcy Code, which provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

\*\*\*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

<u>See</u> 11 U.S.C. § 523(a)(2)(A).

Exceptions to discharge are narrowly construed against the creditor and liberally in favor of the debtor thus effectuating the fresh start policy of the Bankruptcy Code. *In re Bren,* 284 B.R. 681, 689-90 (Bankr. D. Minn. 2002)(citing *The Merchants of Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 791 (8th Cir. BAP 1999)). "To establish fraud under 11 U.S.C. § 523(a)(2)(A), the plaintiffs must show:

(1) the debtor made a representation [other than a statement respecting the debtor's or an insider's financial condition];

(2) at the time the representation was made the debtor knew it was false;

(3) the debtor made the representation deliberately and intentionally with the intent and purpose to deceive the creditor;

(4) the creditor justifiably relied upon such representation; and

(5) the creditor sustained injury as a proximate result of the representation."

*Id.*(citations omitted).

"To qualify as a false representation or false pretense under 11 U.S.C. § 523(a)(2)(A), the statement must relate to a present or past fact." *Id.* (citing *Shea v. Shea (In re Shea)*, 221 B.R.

491, 496 (Bankr.D.Minn.1998)). "[A debtor's] promise...related to [a] future action [which does] not purport to depict current or past fact...therefore cannot be defined as a false representation or a false pretense." *Id*. (citations omitted).

Rule 9(b) of the Federal Rules of Civil Procedure, as incorporated by Rule 7009 of the Federal Rules of Bankruptcy Procedures, requires that in alleging fraud, a party must state with particularity the circumstances constituting fraud. Intent, knowledge and other conditions of a person's mind may be alleged generally.

"Under Rule 9(b)'s heightened pleading standard, 'allegations of fraud … [must] be pleaded with particularity.'" *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. (Ark.) 2011(citing *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir.2007). "In other words, Rule 9(b) requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Id*.

"Rule 9(b) requires that circumstances constituting fraud be pleaded with particularity. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. (Minn.) 2009)(citing Fed.R.Civ.P. 9(b)) "[The Eighth Circuit] interpret[s] this rule 'in harmony with the principles of notice pleading,' and to satisfy it, the complaint must allege 'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Id*.(citing *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir.2002) (citations omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id*. (citing *Schaller Tel. Co.*, 298 F.3d at 746 (quoting *Commercial Prop. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir.1995)).

121294062v1 72096

"Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement." Id.(citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1298 (3d ed.2004); 2 James Wm. Moore et al., Moore's Federal Practice § 9.03[1][g] (3d ed.1997)). "Rule 9(b) is deemed satisfied if the allegations are accompanied by a statement of facts on which the belief is founded." Id. (citing Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir.1997)); see also Moore's Federal Practice § 9.03[1][g] (Rule 9(b) may be satisfied "if the pleader identifies the available information on which the allegation of fraud is founded, as well as the efforts made to obtain additional information.")).

**A.  Plaintiff does not plead damages with particularity.**

Plaintiff pleads damages "in excess of $500,000." This is not particularity, as required under rule 9, as "all allegations" of fraud must be made with particularity. Plaintiff pleads many items of damages, but in conclusory fashion with no actual dollar amounts. Section 523(a) is about obtaining money, property or services by fraud, and it should not be difficult for a plaintiff, especially one who had his own consulting company, to itemize his damages with at least some degree of particularity. Plaintiff's failure to do so is fatal to his claim.

**B.  The vast majority of his claim is related to the alleged financial condition of the Defendant's companies.**

Section 523(a)(2)(A) is black and white on one issue: It does not relate to a claim based on a statement regarding the debtor or an insider's financial condition. A significant portion of Plaintiff's complaint contains conclusory allegations regarding the financial condition of the Defendant's companies. For example, paragraphs 16, 17, 18, 19 and 29 all recite allegations regarding the financial condition of Visible Customer, and these are the allegedly "false" allegations on which Defendant relies. These allegations are insufficient to state a claim for relief under Count I.

121294062v1 72096

**C.    The remaining allegation in Count I are deficient**.

Plaintiff's allegations under Count I are not pleaded with particularity. Count I provides

as follows, with comment where appropriate:

85.    Defendant Nelson made false representations of material fact to Plaintiff.

**Comment:  this says nothing.**

86.    To induce Plaintiff to accept employment, Defendant Nelson specifically represented to Plaintiff that Visible Customer had 175 current customers, the product had a proof of concept, the Product/Service was at the beginning of the growth cycle, and that the Product/Service of Visible Customer was operating and producing a ten (10) times or 1,000% return for the auto dealer accounts at $1,000 per month gross profit for Visible Customer.

**Comment:  these are allegations of oral statements regarding an insider's financial condition.  A claim under Section 523 cannot be sustained based on such allegations.**

87.    These representations were false, as, upon information and belief, Visible Customer did not have 175 current customers, the Product/Service was not operating and producing at full capability, the product had no proof of concept, the dealers were not receiving ten (10) times or 1000% return on the Product/Service, and Visible Customer was not earning a gross profit of 1,000% per month.

**Comment:   "Upon information and belief" does not satisfy the pleading requirements under Rule 9.  Plaintiff was a high level officer who worked at Visible Customer *for two years* and he cannot provide particular details but instead relies on "information and belief."  This does not pass the smell test.**

90.    Defendant Nelson either knew that the representations were false or made the representations as being true without knowing whether they were true or false.

**Comment:  How did the Defendant know there were not true?  Even under Rule 8, some actual facts should be pleaded.**

91.    Defendant Nelson intended that Plaintiff act on the false representations.

92.    Plaintiff was induced to act, and did act, in reliance on the false representations.

**Comment:  How did this occur?**

93.    As a direct and proximate result of Defendant Nelson's conduct, Plaintiff has suffered and will continue to suffer substantial lost income and benefits, lost career

121294062v1 72096

opportunities and job security, harm to his professional reputation and other damages.

**Comment: what are the damages?**

94.     By reason of the foregoing, Defendant Nelson is liable to Plaintiff for the damages he sustained, in excess of $500,000, which debt is nondischargeable debt under 11 U.S.C. § 523(a)(2)(A).

**Comment: what are the damages?**

<u>See</u> Exhibit A.

There is simply no basis for a claim under Section 523 under these facts. Defendant was not Plaintiff's employer and Plaintiff provides no real detail whatsoever. Instead, he simply provides bare and conclusory allegations, the most important of which are made upon information and belief, are oral statements, and which relate to an insider's financial condition. Plaintiff's Complaint must be dismissed.

**D.      Plaintiff ratified the contract.**

Even if Plaintiff states a claim for fraud, according to paragraphs 34 and 68, Plaintiff worked at Visible Customer for almost two years. It is inconceivable that he did not discover his "facts" for almost two years. A party with knowledge of fraud must act diligently and without delay and the transaction will be deemed ratified if he does any material act which assumes the transaction is valid. *In re Vandersee Corp.*, 173 F.Supp. 217. 218 (D.N.J. 1959).

On the face of his Complaint, Plaintiff did not act diligently; it should be dismissed.

**E.      The vast majority of allegations are irrelevant.**

Overall, Plaintiff's complaint is a hodgepodge of irrelevant facts cobbled together in such as way as to make it difficult to determine why they are stated in the first instance. For example, paragraphs 77 through 81 are a list of companies allegedly owned by the Defendant, with no reason why they are listed, or how they are relevant.

121294062v1 72096

Paragraphs 12 and 13 provide that the Defendant stated he was an alcoholic and was not using alcohol or drugs.  The relevance of these allegations is a mystery.  The only reason these allegations are in Plaintiff's Complaint is to embarrass the Defendant.  They are not relevant to any claim for relief.

In paragraphs 49 and 74, Plaintiff alleges that the Defendant paid a Visible Customer payroll from his own accounts and on "information and belief" personally guaranteed at least one debt of Visible Customer.  It is a mystery how the alleged fact that Defendant himself covered payroll so that employees would get paid is somehow relevant to Plaintiff's claims of fraud and willful and malicious injury.  Indeed, it is only evidence of Defendant's good faith.

Overall, Plaintiff claims he was wronged.  Lots of creditors are wronged in various ways by someone who files bankruptcy.  Most creditors, however, even if wronged have no claim for nondischargeability, as is the case here.  Plaintiff's Complaint must be dismissed.

## II.     PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER SECTION 523(a)(6).

While Plaintiff, on his claim for willful and malicious injury, is relieved of the more stringent burden of pleading with particularity under Rule 9, he must still provide more than simply conclusory allegations.  This he fails to do.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1965-66 (2007).

"Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also

16

'grounds' on which the claim rests." *Id. at* 127 S.Ct. 1966, n. 3 (citing 5 Wright & Miller § 1202, at 94, 95 (Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it.))

It is difficult to understand under exactly what theory the Plaintiff is attempting to proceed to obtain a finding of willful and malicious injury. A significant number of allegations in the Plaintiff's complaint are simply irrelevant. Boiled down to its essence, the complaint make no sense because Plaintiff's damages at their core arise from the failure of Visible Customer, an unfortunate occurrence which has had an equally devastating effect on the Defendant. Regardless, from the Plaintiff's Complaint, at Count II:

97. Plaintiff, in good faith, reported what he believed to be violations of federal and/or state laws, including but not limited to, his complaints to Defendant Nelson and Visible Customer that their depositing checks payable to Visible Customer in Nelson's accounts was unlawful, that Curt Company One did not have authority to deduct withholdings from employee paychecks and that their filing returns with the Internal Revenue Service was unlawful.

98. Plaintiff also objected and reported to Defendant Nelson and Visible Customer that their misrepresenting to customers that their product could perform specific functions when it could not was fraudulent.

99. Defendant Nelson and Visible Customer retaliated against Plaintiff as a result of his reports and refusals, including but not limited to, terminating his employment.

100. The adverse employment actions as alleged herein constitute violations of Minn. Stat. § 181.932, et seq.

101. After Plaintiff's employment was terminated, Defendant Nelson, Visible Customer and Administaff owed, and continue to owe, Plaintiff salary, and part of the signing bonus, accrued but unused vacation, and severance pay.

102. Plaintiff demanded in writing that Defendant Nelson or Visible Customer pay the monies owed to him.

103. Defendant Nelson has failed to pay Plaintiff monies constituting wages earned and unpaid.

17

104. Defendant Nelson is liable to pay Plaintiff monies owed. In addition, under Minn. Stat. § 181.13, Plaintiff is entitled to fifteen (15) days of wages at the base salary rate for Defendant Nelson's failure to pay him monies owed upon termination from employment.

105. After Plaintiff's employment was terminated, Defendant Nelson reportedly said to the management group of Visible Customer that Plaintiff had "been undermining the company and all of you for the last six months"; "Siamak has become increasingly volatile over the past six months"; "he has been making many demands over the past several months"; "Siamak was demanding to be paid even though no one else is able to get paid"; "don't trust anything Siamak had told you"; "Siamak has thrown all of you under the bus"; "Siamak resigned from the company"; "Siamak invested money in the company and asked for a ridiculous interest rate on the money he borrowed the company"; "Siamak was calling Visible Customer's dealers saying horrible things about Nelson relating to his past"; and that Siamak gave Nelson "bad information to keep him investing in Visible Customer as well as some of the larger investments the Company had made."

106. Defendant Nelson's statements about Plaintiff were false statements.

107. Defendant Nelson's false statements about Plaintiff were intended to, and did, harm Plaintiff's professional reputation and lower him in the estimation of his business colleagues.

108. Defendant Nelson offered Plaintiff and his wife, Afsaneh Motameni, the opportunity to invest $100,000 in Curt Company Investments, which Defendant Nelson represented, was financially backed by Curt Company One with accounts in excess of $18 million dollars.

109. Plaintiff and his wife, and Defendant Nelson as President and CEO of Curt Company Investments, executed a Promissory Note for $100,000, effective November 20, 2008. But for Defendant Nelson's representation of the financial status of Curt Company Investments and its backing by Curt Company One, Plaintiff and his wife would not have lent money to Curt Company Investments.

110. Curt Company Investments has failed to pay Plaintiff and his wife the interest owed on the principal amount of the Note, thereby breaching the Note.

111. On April 1, 2010, Defendant Nelson executed a Secured Promissory Note as the CEO of Visible Customer Holdings, in the amount of $50,000.00 to Plaintiff, the lender. Plaintiff and his wife would not have loaned Visible Customer Holdings funds unless Defendant Nelson made it a condition of being paid the principal they were owed on the Note given them by Curt Company Investments.

112. Defendant Nelson has failed to pay Plaintiff the amount due on the Secured Promissory Note, thereby breaching the Secured Promissory Note.

121294062v1 72096

113.    Defendant Nelson knew at the time he executed the Note that Visible Customer would not be able to repay the Note and understood that this would result in harm to Plaintiff.

114.    As a direct and proximate result of Defendant Nelson's conduct, Plaintiff has suffered and will continue to suffer substantial lost income and benefits, lost career opportunities and job security, harm to his professional reputation and other damages.

115.    By reason of the foregoing, Defendant Nelson is liable to Plaintiff in excess of $500,000, which debt constitutes a nondischargeable debt under 11 U.S.C. § 523(a)(6).

See Exhibit A.

### A.    The Plaintiff's employer was not the Defendant.

The Plaintiff's first claim under Section 523(a)(6), as well as can be determined, is contained in paragraphs 97-104 of his Complaint and is that Defendant is liable for statutory damages for a wrongful termination. Defendant, however was not the Plaintiff's employer. As such, as best as can be gleaned from Plaintiff's complaint, Plaintiff is attempting to pierce the corporate veil of Visible Customer.

"While [the 8th Circuit] has never articulated the federal common law standard for piercing the corporate veil between an individual and a corporation, the Tenth Circuit has applied a two-prong test: "(i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations." *Minnesota Laborers Health and Welfare Fund v. Scanlan*, 360 F.3d 925, 928 (8th Cir. 2004)(citing *NLRB v. Greater Kan. City Roofing*, 2 F.3d 1047, 1052 (10th Cir.1993).

Under Minnesota law, the shareholders of a corporation ordinarily are not personally liable for the corporation's debts. Minn.Stat. § 302A.425 (2010). Under limited circumstances,

19

however, a court may "pierce the corporate veil" and hold an individual liable for the acts of a corporate entity. *See Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn.1979). Factors to be considered when determining whether a corporation was formed as the shareholder's alter ego, include whether (1) there is sufficient capitalization for purposes of corporate undertaking; (2) corporate formalities have been observed; (3) dividends have been paid; (4) the debtor corporation was solvent at the time of the transaction in question; (5) the dominant shareholder siphoned funds; (6) there is a nonfunctioning of other officers and directors; (7) there is an absence of corporate records; and (8) the corporation exists as a mere façade for individual dealings. *Id.* at 283 N.W.2d at 512.

Here, there are no allegations whatsoever that could support a finding that the Defendant is the alter ego of Visible Customer. In addition, in reviewing the allegations, the Plaintiff has utterly failed to demonstrate any actual damages. Finally, according to paragraphs 68 and 76 of the Plaintiff's Complaint, Visible Customer filed a Chapter 7 petition only one month after the Plaintiff was terminated. This means that even if the Plaintiff had not have been terminated, he would have lost his job anyway through no fault of anyone (including the Defendant).

**B.  The Plaintiff's defamation claim fails as matter of law.**

The Plaintiff's second claim under Section 523(a)(6), as well as can be determined, is contained in paragraphs 105 through 107 of his Complaint, and appears to be a claim for defamation

There are three elements in a defamation claim: (1) "a false and defamatory statement made about the plaintiff"; (2) made "in an unprivileged publication to a third party"; and (3) "that harmed the plaintiff's reputation in the community." *Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn.2003). The statement must be particularly harmful to plaintiff in his

121294062v1 72096

business, and general disparagement is not enough. *High v. Supreme Lodge of the World, Loyal Order of Moose*, 214 Minn. 164, 167, 7 N.W.2d 675, 678 (1943). In addition to this, the Plaintiff must demonstrate willful and malicious *injury*. *See* 11 U.S.C. 523(a)(6).

Willful and malicious are two distinct requirements that a plaintiff must prove by a preponderance of the evidence. *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir.1999). "Debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger*, 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). A claim under Section 523(a)(6) must be supported by a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Geiger*, 523 U.S. at 61, 118 S.Ct. 974. A willful injury is "a deliberate or intentional invasion of the legal rights of another, because the word 'injury' usually connotes legal injury ... in the technical sense." *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir.1997), aff'd, 523 U.S. at 57, 118 S.Ct. 974. Maliciousness is conduct targeted at the creditor, in the sense that the conduct is certain or almost certain to cause injury. *Siemer v. Nangle (In re Nangle)*, 274 F.3d 481, 484 (8th Cir.2001).

Here, Plaintiff's allegations regarding harm are nothing more than conclusory allegations of the elements of his claim; he literally parrots the elements. He has not alleged any actual injury to himself or his reputation.

**C.    The Plaintiff's remaining allegations under Count II only support a claim of breach of contract against Visible Customer.**

Plaintiff's remaining allegations under Count II do not, in any manner, support a claim under Section 523(a)(6). The allegations contained in Paragraph 108 through 113 are essentially as follows:

1.    Plaintiff lent money to Visible Customer and Curt Company Investments.

121294062v1 72096

2.      Visible Customer and Curt Company Investments did not pay this money back.

3.      Defendant knew that Visible Customer and Curt Company Investments would not be able to pay the funds back.

What the Plaintiff is attempting to argue is a claim under Section 523(a)(2)(B), which is not pleaded, the facts of which have not been pleaded with any particularity, and the facts pleaded do not allege *a statement in writing regarding or an insider's financial condition.* This deficiency is absolutely fatal to any claim under Section 523(a)(2)(B).

Finally, Paragraphs 114 and 115 are nothing more than conclusory allegations regarding damages, no real facts are stated here.

## CONCLUSION

The Defendant respectfully requests that the court grant his motion, and dismiss this case with prejudice.

Dated: September 27, 2011                 HINSHAW & CULBERTSON LLP

                                        By: /e/ Jamie R. Pierce
                                        Thomas G. Wallrich (#213354)
                                        Jamie R. Pierce (#305054)
                                        Peter L. Crema, Jr. (#218868)
                                        333 South Seventh Street, Suite 2000
                                        Minneapolis, MN 55402
                                        Telephone: 612-333-3434

                                        ATTORNEYS FOR DEFENDANT

121294062v1 72096

In re:                                                      BKY Case No. 11-43113 RJK

Curtis C. Nelson,

                        Debtor.

_____

Siamak Masoudi,                                             Adv. No. 11-4218

                        Plaintiff,

vs.

Curtis C. Nelson,

                        Defendant.

_____

        Amy E. Kulbeik, an employee of Hinshaw & Culbertson LLP, and in the course of said
employment on September 27, 2011 caused the following documents:

        1.      Notice of Hearing and Motion for Order Dismissing Complaint;
        2.      Defendant's Memorandum of Law in Support of His Motion to Dismiss; and
        3.      [Proposed] Order.

to be filed electronically with the Clerk of Court through ECF, and that a copy of the above-
referenced document were delivered to the people listed below who are Filing Users, by
automatic e-mail notification on pursuant to the Electronic Case Filing System and this notice
constitutes service or notice pursuant to Local Rule 9006-1(a).

Susanne J Fischer on behalf of Plaintiff Siamak Masoudi
suef@e-ulaw.com, jackiem@e-ulaw.com;sheilae@e-ulaw.com;aprilp@e-ulaw.com

Jane Welch on behalf of Plaintiff Siamak Masoudi
jwelch@morrisonfenske.com, elundgren@morrisonfenske.com

 Dated:  September 27, 2011                    /s/ Amy E. Kulbeik_____
                                               Amy E. Kulbeik

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                        BKY Case No. 11-43113 RJK

Curtis C. Nelson,

          Debtor.

Siamak Masoudi,                               Adv. No. 11-4218

          Plaintiff,

vs.

Curtis C. Nelson,

          Defendant.

## ORDER

This matter came before the court on the Defendant's motion to dismiss.  Based on the motion,

IT IS ORDERED:

    1.    The Plaintiff's complaint is dismissed with prejudice.

Dated:

                                          Robert J. Kressel
                                          United States Bankruptcy Judge

121294062v1  72096